UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

M3 PRODUCTIONS, INC.,

        Plaintiff,

    v.

DARON JONES and QUINNES D.
PARKER,

        Defendants.

CIVIL ACTION NO.
1:19-CV-01435-JPB

## ORDER

This matter comes before the Court on Plaintiff's Motion for Default

Judgment [Doc. 53] pursuant to Federal Rule of Civil Procedure 55(b) and Local

Rule 83.1(E)(5).  This Court finds as follows:

## BACKGROUND

**A.    Factual History**

This action arises from the use of a trademark associated with the R&B

group 112.  Marvin Scandrick, Quinnes Parker, Daron Jones and Michael Keith

formed 112 in 1996, debuting a double-platinum album the following year.  [Doc.

15, p. 4].  While Parker and Jones (collectively, "Defendants") have left 112

intermittently over the years to pursue other ventures, lead singer Scandrick and

Keith have remained in the group and continue to perform as 112.  Id.  In 2017,

Defendants left the group for a final time.  Id.

On March 22, 2018, M3 Productions, Inc., ("Plaintiff"), a company owned

by Scandrick, applied for a trademark for the name "112" (the "112 mark") under

class 41 with the United States Patent and Trademark Office (the "PTO").[1]  Id. at

5.  The PTO confirmed Plaintiff's registration of a class 41 trademark on

December 25, 2018.  Id.  Plaintiff owns exclusive rights to the 112 mark for the

following purposes:

> Audio recording and production; Entertainment services, namely,
> providing a web site featuring photographic, audio, video and prose
> presentations featuring musical performances; Entertainment services,
> namely, providing non-downloadable prerecorded music, information
> in the field of music, and commentary and articles about music, all on-
> line via a global computer network; Entertainment services in the
> nature of live visual and audio performances by a musical group;
> Entertainment services in the nature of a musical group;
> Entertainment services, namely, personal appearances by a musical
> group; Entertainment, namely, live music concerts; Music production
> services; Record master production; Record production; Videotape
> production.

---

[1] In March 2018, Plaintiff also applied for a second trademark for "112" under class 9.
[Doc. 53-1, p. 3].  That trademark is not at issue here.  Plaintiff alleged infringement of
the class 9 trademark for the first time in its Motion for Default Judgment, while all prior
pleadings referred exclusively to the class 41 trademark.  The Court will thus limit its
inquiry into infringement of the class 41 trademark alone.  See Lary v. Trinity Physician
Fin. & Ins. Servs., 780 F.3d 1101, 1106 (11th Cir. 2015) ("'A default judgment must not
differ in kind from . . . what is demanded in the pleadings.' . . . [Defendants] cannot, by
default judgment, be held liable for a fax that was not alleged in the complaint." (first
alteration in original) (quoting Fed. R. Civ. P. 54(c))).

[Doc. 1-4].[2]

Plaintiff alleges that Defendants have infringed the 112 mark on multiple occasions.[3]  According to Plaintiff, Defendants began performing in 2018 under the 112 mark, both jointly and individually, and used the 112 mark to identify themselves.  [Doc. 1-1, p. 5].  For example, both Defendants appeared in an advertisement for a 2019 New Year's event that represented themselves as "Daron & Q Parker of 112."  Id. at 6; [Doc. 1-3, p. 4].  That advertisement, among others, was posted on Defendant Parker's Instagram account, where his account name is "qparker112."  [Doc. 1-1, p. 6]; [Doc. 1-3, p. 4].  An advertisement for a January 17th event listed Defendant Parker as the host and described him as "Q. Parker of

---

[2] Plaintiff filed an Amended Complaint on June 19, 2019.  [Doc. 15].  Ordinarily, the Amended Complaint would supersede Plaintiff's original Complaint, but "where the amendment specifically refers to or adopts the earlier pleading, it does not supersede the prior pleading."  Bank of the Ozarks v. Khan, 903 F. Supp. 2d 1370, 1382 (N.D. Ga. 2012).  Plaintiff expressly refers to the original Complaint in the Amended Complaint.  See [Doc. 15, p. 4].  In this Order, the Court will thus consider Plaintiff's initial Complaint and the exhibits attached thereto in conjunction with Plaintiff's Amended Complaint.

[3] Plaintiff provided extensive documentation of infringement in its Motion for Default Judgment and accompanying exhibits.  See [Docs. 53 through 53-17].  However, Plaintiff did not plead all of those facts in its original Complaint or Amended Complaint, and therefore, the Court cannot rely on them now.  See Carlisle v. Nat'l Com. Servs., Inc., No. 1:14-CV-515, 2017 WL 1075088, at *9 (N.D. Ga. Feb. 22, 2017) ("This Court cannot consider violations . . . raised for the first time in the Motion for Default Judgment. . . . Therefore, the Court will only consider the violations alleged in the Plaintiff's Amended Complaint and will focus only on the Amended Complaint's well-pleaded facts in determining [the Defendant's] liability.").

112." [Doc. 1-3, p. 3]. Plaintiff also contends that Defendant Parker used his purported affiliation with 112 to promote a play in which he was performing. [Doc. 1-1, p. 5].

Plaintiff alleges that Defendants were aware of Plaintiff's ownership of the 112 mark. [Doc. 1, p. 3]. In a proceeding in Fulton County Superior Court in August 2018, Defendants acknowledged Plaintiff's pending trademark application for the 112 mark. Id. Plaintiff sent a cease-and-desist letter to Defendants on January 23, 2019, advising them that their "unlawful use of the word '112' infringes upon [Plaintiff's] exclusive trademark." [Doc. 1-6, p. 1].

According to Plaintiff, Defendants' infringing conduct is ongoing. Defendants continue to perform as 112, "secure and appear at events and performances using the 112 moniker[]" and "use the registered 112 name in [their] promotions, advertising and marketing of scheduled events." [Doc. 1, pp. 3, 4]. Plaintiff alleges, too, that Defendants "continue to monetarily and reputationally benefit from their marketed association with 112." [Doc. 15, p. 4].

## B.   Procedural History

Plaintiff filed this action on March 29, 2019. [Doc. 1]. In its Amended Complaint filed June 19, 2019, Plaintiff brought the following claims: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin,

false advertising and unfair competition pursuant to 15 U.S.C. § 1125(a); (3)

trademark dilution under 15 U.S.C. § 1125(c); (4) unfair and deceptive trade

practices in violation of Georgia law; (5) common law trademark infringement and

unfair competition; and (6) trademark dilution under O.C.G.A. § 10-1-451 and

injury to business reputation.[4]  [Doc. 15, pp. 8–15].

After the close of discovery on January 31, 2020, the parties failed to submit

dispositive motions or a consolidated pretrial order, and on September 25, 2020,

the Court issued an order requiring Plaintiff to show cause why the case should not

be dismissed for failure to prosecute.  [Doc. 43].  In its response to the September

show-cause order, Plaintiff advised the Court that Defendants' counsel had

suffered a stroke and would not be returning to the practice of law in the near

future.  [Doc. 45, pp. 1–2].  In a subsequent order issued March 29, 2021, this

---

[4] Plaintiff claims that Defendants violated the anti-dilution laws of numerous other states, citing to code provisions from Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, Hawaii, Idaho, Illinois, Iowa, Indiana, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Washington, West Virginia and Wyoming.  [Doc. 15, pp. 14–15].  Plaintiff alleges that the Court has supplemental jurisdiction over its state-law claims under Georgia law pursuant to 28 U.S.C. § 1367.  Id. at 7.  Plaintiff does not provide a jurisdictional basis for the alleged violations of thirty-five other states' trademark dilution statutes.  As such, the Court declines to consider those claims and will limit its analysis to Plaintiff's allegations under Georgia law alone.  See Fed. R. Civ. P. 8(a)(1) (requiring that a claim for relief include "a short and plain statement of the grounds for the court's jurisdiction").

Court instructed the parties to notify the Court within a specified time period of the Defendants' retention of new counsel or of their intention to proceed *pro se*. [Doc. 49, p. 2]. The parties failed to do so, and the Court issued a second show-cause order on April 14, 2021, instructing the parties to show why the case should not be dismissed for want of prosecution for failure to obey a lawful order of the Court. [Doc. 50].

In its April 21, 2021 response, Plaintiff requested the entry of default judgment pursuant to Local Rule 83.1(E)(5), which authorizes default judgment if a party fails to timely comply with an order to notify the clerk of new counsel or of the decision to proceed *pro se*. [Doc. 51, p. 5]. On April 22, 2021, the Court struck Defendants' Answer and placed Defendants in default for failure to obtain counsel or notify the Court of their intention to proceed *pro se* and directed Plaintiff to file a motion for default judgment. [Doc. 52, pp. 2, 3]. Plaintiff moved for default judgment on May 24, 2021, requesting a permanent injunction prohibiting Defendants from using the 112 trademark and the award of statutory damages and attorney's fees. [Doc. 53, p. 2].

## ANALYSIS

**A.    Legal Standard**

When a defendant fails to file an answer or otherwise defend, a court may enter judgment by default.  Fed. R. Civ. P. 55(b)(2).  Default judgments are typically disfavored.  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015).  "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'"  Id. at 1245 (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). In other words, "[t]he court may grant default judgment [only] on those claims brought by [the] [p]laintiff that are legally sufficient and supported by well-pleaded allegations."  Earthlink, Inc. v. Log on Am., Inc., No. 1:02-CV-1921, 2006 WL 783360, at *1 (N.D. Ga. Mar. 24, 2006); see also Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988) ("In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint."); Functional Prods. Trading, S.A. v. JITC, LLC, No. 1:12-CV-0355, 2014 WL 3749213, at *11 (N.D. Ga. July 29, 2014) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").  "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim," and the Court must determine "whether the complaint 'contain[s]

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face.'" Surtain, 789 F.3d at 1245 (alteration in original) (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009)).

**B.    Trademark Infringement and Unfair Competition Claims**

Plaintiff asserts the following claims under the Lanham Act:  trademark

infringement (claim 1); false designation of origin, false advertising and unfair

competition (claim 2); and trademark dilution (claim 3).  Plaintiff also brings state-

law claims of unfair and deceptive trade practices (claim 4); common law

trademark infringement and unfair competition (claim 5); and trademark dilution

and injury to business reputation (claim 6).

"To establish a prima facie case of trademark infringement under [the

Lanham Act], a plaintiff must show (1) that it had trademark rights in the mark or

name at issue and (2) that the other party had adopted a mark or name that was the

same, or confusingly similar to its mark, such that consumers were likely to

confuse the two." Commodores Ent. Corp. v. McClary, 879 F.3d 1114, 1130–31

(11th Cir. 2018) (quoting Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010)).

Notably, the standard is the same for a claim of unfair competition/false

designation under the Lanham Act, see Tana, 611 F.3d at 772–73, trademark

infringement under Georgia law, see Kyle v. Ga. Lottery Corp., 698 S.E.2d 12, 14

(Ga. Ct. App. 2010), and unfair competition under Georgia's Uniform Deceptive Trade Practices Act, see Energy Four, Inc. v. Dornier Med. Sys., Inc., 765 F. Supp. 724, 730–31 (N.D. Ga. 1991).  As such, the Court will analyze together claims 1, 2, 4 and 5 (respectively, federal trademark infringement; federal unfair competition; unfair and deceptive trade practices under state law; and trademark infringement and unfair competition under state law), then the Court will turn to claims 3 and 6 (respectively, federal trademark dilution and state-law trademark dilution).

    1.    *Rights in the Trademark at Issue*

Registration of a mark on the principal register is prima facie evidence "of the registrant's ownership of the mark . . . and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration." 15 U.S.C. § 1115(a).  Principal registration thus protects an owner's right to exclusively use the mark, but only insofar as that use is related to "the goods or services" identified on the registration.  Cf. Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP, 746 F.3d 1317, 1324 (Fed. Cir. 2014) ("[T]he services recited in the [trademark] application determine the scope of the post-grant benefit of registration.").

Plaintiff has satisfied the first element of a trademark infringement claim—possession of trademark rights in the mark at issue—by providing evidence of the registration of the 112 mark.  [Doc. 1-4].  The next inquiry is thus whether Defendants made unauthorized use of this trademark such that they created a likelihood of confusion.

2.    *Likelihood of Confusion*

The Eleventh Circuit Court of Appeals applies a seven-factor test to evaluate whether a likelihood of confusion exists between two marks:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

Tana, 611 F.3d at 774–75.  The Court "need not consider all factors in every case," but "'the type of mark and the evidence of actual confusion are the most important' of all the factors."  Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc., 983 F.3d 1273, 1281 (11th Cir. 2020) (quoting Fla. Int'l Univ. Bd. of Trs. v. Fla Nat'l Univ., Inc., 830 F.3d 1242, 1255 (11th Cir. 2016)).

Plaintiff has not provided persuasive evidence as to the strength of the 112 mark, other than the conclusory statement that it "became a famous and well-

known symbol of the Grammy Award winning R&B group 112." [Doc. 15, p. 11].

However, Defendants use an identical design to the protected mark ("112"). They

use the 112 mark to advertise musical performances and to hold themselves out as

members of the 112 musical group, both of which are uses of the mark to which

Plaintiff owns exclusive rights under the class 41 trademark. Defendants offer

entertainment services, namely musical performances, under the mark, and so does

Plaintiff. Defendants' use of the mark is intentional; they ignored Plaintiff's cease-

and-desist letter and instead continue to use the 112 trademark in public

advertisements related to musical performances. Furthermore, Defendants'

ongoing use of the 112 mark to advertise on social media and to make personal

appearances is likely to cause confusion among the consuming public. See E.

Remy Martin & Co v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1529 (11th

Cir. 1985) ("The law is well settled in this circuit that evidence of *actual* confusion

between trademarks is not necessary to a finding of *likelihood* of confusion,

although it is the best such evidence."). Although Plaintiff has not presented

evidence as to the similarity of sales or advertising methods, the Court finds that

Plaintiff has alleged sufficient facts to show that Defendants made unauthorized

use of the class 41 trademark.

The Court thus **GRANTS** default judgment for Plaintiff on the claims for trademark infringement, false designation of origin, false advertising and unfair competition under the Lanham Act; and for unfair and deceptive trade practices, trademark infringement and unfair competition under Georgia law.

## C.    Trademark Dilution Claims

The Lanham Act entitles the owner of a famous trademark to injunctive relief

> against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution . . . of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).  Accordingly, to bring a claim of trademark dilution, a plaintiff must establish the following:

> (1) the plaintiff is the owner of a mark which qualifies as a "famous" mark; (2) the defendant is making commercial use; (3) in interstate commerce; (4) of a mark or trade name; (5) defendant's use began after the plaintiff's mark became famous; and (6) defendant's use causes dilution by lessening the capacity of plaintiff's mark to identify and distinguish goods or services.

Nike Inc. v. Variety Wholesalers, Inc., 274 F. Supp. 2d 1352, 1372 (S.D. Ga. 2003), aff'd, 107 F. App'x 183 (11th Cir. 2004).

Therefore, the first criterion in a trademark dilution claim is ownership of a famous mark.  A mark qualifies as a "famous" mark "if it is widely recognized by

the general consuming public of the United States as a designation of source of the

goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  In

determining whether a mark is "famous," courts may consider the following

factors:

> (i)    The duration, extent, and geographic reach of advertising and
>        publicity of the mark, whether advertised or publicized by the
>        owner or third parties.
> (ii)   The amount, volume, and geographic extent of sales of goods
>        or services offered under the mark.
> (iii)  The extent of actual recognition of the mark.
> (iv)   Whether the mark was registered . . . on the principal register.

Id.  Plaintiff has presented evidence that the 112 mark is on the principal register.

However, Plaintiff has not presented any persuasive facts pertaining to the other

factors or any evidence otherwise establishing that the 112 mark qualifies as

"famous."  Plaintiff offers the conclusory assertion that "[t]he 112 name and

trademark became a famous and well-known symbol of the Grammy Award

winning R&B group 112." [Doc. 15, pp. 10–11].  This statement is insufficient to

pass the threshold inquiry of fame that is required for a dilution claim under the

Lanham Act.  See Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356,

1373 (Fed. Cir. 2012) ("It is well-established that dilution fame is difficult to

prove.  This is particularly true where . . . the mark is a common English word that

has different meanings in different contexts." (citations omitted)).  Because

Plaintiff cannot meet the first element for a claim of trademark dilution under the Lanham Act, the Court will not further address this allegation.  The Court **DENIES** default judgment on the federal trademark dilution claim.

Plaintiff also brings a trademark dilution claim under Georgia law, pursuant to O.C.G.A. § 10-1-451(b). [5]  However, the Eleventh Circuit Court of Appeals has held that "a trademark infringement claim under Georgia law is reviewed under the same standards as a claim under the Lanham Act."  Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 F. App'x 899, 902 n.4 (11th Cir. 2007); see Crossfit, Inc. v. Quinnie, 232 F. Supp. 3d. 1295, 1310 (N.D. Ga. 2017) (noting that "[t]he federal Lanham Act analysis governs the analysis of CrossFit's state law trademark claims for trademark dilution under O.C.G.A. § 10-1-451(b)").  Accordingly, having denied default judgment as to Plaintiff's claim under the Lanham Act, the Court **DENIES** default judgment as to Plaintiff's claim for state-law trademark dilution.

---

[5] Plaintiff frames its state-law dilution claim as one for "State Trademark Dilution and Injury to Business Reputation."  [Doc. 15, p. 13].  The Georgia Supreme Court has observed that "references to 'injury to business reputation' in state antidilution statutes like Georgia's are the textual basis for trademark tarnishment claims."  McHugh Fuller L. Grp., PLLC v. PruittHealth, Inc., 794 S.E.2d 150, 155 (Ga. 2016) (citing Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 432 (2003)).  Plaintiff's claim for "Injury to Business Reputation" is thus a component of its trademark claim and not a separate allegation.

**D.    Relief**

1.    *Injunctive Relief*

Under the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law.  15 U.S.C. § 1116(a).  As a general matter, "the scope of injunctive relief should be tailored to address the specific violations of law by the defendants."  Dunkin' Donuts Inc. v. Kashi Enters., Inc., 119 F. Supp. 2d 1363, 1364 (N.D. Ga. 2000).  Additionally, a court may issue a permanent injunction against a defendant who has ceased his infringing use and who is in default.  PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1222–23 (S.D. Fla. 2004).  Because Defendants have failed to respond to orders of this Court, it is difficult for Plaintiff to prevent further infringement absent an injunction.  See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an

injunction is in the public interest.  Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).

Irreparable harm is generally presumed when a plaintiff makes a successful prima facie showing of trademark infringement.  Foxworthy v. Custom Tees, Inc., 879 F. Supp. 1200, 1219 (N.D. Ga. 1995).  As noted earlier, Plaintiff alleged a likelihood of confusion caused by Defendants' conduct and successfully stated a claim for trademark infringement.  Plaintiff has thus shown that it will suffer irreparable injury if Defendants' infringing use of the 112 mark continues.

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  Crossfit, Inc. v. Quinnie, 232 F. Supp. 3d 1295, 1316 (N.D. Ga. 2017) (quoting Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995)).  Plaintiff did not expressly address the adequacy of a remedy at law in its Amended Complaint.  However, "[i]t is . . . generally recognized in trademark infringement cases that 'there is not adequate remedy at law to redress infringement.'"  Id. (quoting Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989)).  Given the general rule favoring injunctive relief in trademark infringement cases, the Court acknowledges that Plaintiff is unlikely to have an adequate legal remedy for Defendant's actions.

The balance of hardships favors the issuance of a permanent injunction. Defendants will not suffer harm if they are enjoined from making unauthorized use of a mark owned by Plaintiff, while Plaintiff faces monetary and reputational harm if Defendants continue to use the mark.  See Tiramisu Int'l LLC v. Clever Imports LLC, 741 F. Supp. 2d 1279, 1288 (S.D. Fla. 2010) (noting that in a trademark infringement case, "the infringing defendant had no right to use the mark, and therefore could suffer no legitimate hardship by being forced to stop that which it had no right to do").

Lastly, a permanent injunction is in the public interest.  On this factor, Plaintiff states that such an injunction would "further[] the goals of the United States Constitution by protecting original expression and preventing consumer confusion."  [Doc. 15, p. 3].  The Eleventh Circuit has held that "'complete injunctions against the infringing party are the order of the day'"  because "the public deserves not to be led astray by the use of inevitably confusing marks." Angel Flight of Ga., 522 F.3d at 1209 (quoting SunAmerica Corp. v. Sun Life Assurance Co. of Can., 77 F.3d 1325, 1336 (11th Cir. 1996)).  A permanent injunction against Defendants' infringing use would thus serve the public interest in avoiding consumer confusion.

For the foregoing reasons, the Court **GRANTS** Plaintiff's request for a permanent injunction.

2.    *Statutory Damages for Use of a Counterfeit Mark*

In cases involving the use of a counterfeit mark,[6] a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c). Additionally, if the Court finds that a defendant's counterfeiting actions were willful, the Court may impose damages up to $2,000,000 per mark per type of good. Id. § 1117(c)(2). Generally, courts have "wide latitude . . . in awarding statutory damages" and are "bounded only by the statutory limits." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990). In infringement cases, statutory damages are allowed because proving actual damages is "extremely difficult if not impossible." Petmed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) (internal punctuation and citation omitted). Two factors warrant special consideration in determining the amount of statutory damages: (1) the willfulness of defendant's conduct and (2) the deterrent value of any sanction imposed. Ill.

---

[6] A counterfeit mark is "a spurious mark which is identical with, or substantially indistinguishable from," a mark that is registered on the Principal Register. 15 U.S.C. § 1127.

Tool Works Inc. v. Hybrid Conversions, Inc., 817 F. Supp. 2d 1351, 1355 (N.D. Ga. 2011).

In this case, Plaintiff requests $200,000 in statutory damages. While it is true that statutory damages respond to the difficulty of measuring actual damages in trademark infringement cases, they are nonetheless "meant to serve as a substitute for actual damages, so the [c]ourt will evaluate whether the requested damages bear some relation to the actual damages suffered." Coach, Inc. v. Becka, No. 5:11-CV-371, 2012 WL 5398830, at *6 (M.D. Ga. Nov. 2, 2012) (internal punctuation and citation omitted). Unlike plaintiffs in numerous other cases, Plaintiff here has offered no rationale for arriving at $200,000 in statutory damages. See, e.g., Kason Indus., Inc. v. L & T Rest. Equip. Inc., No. 3:19-CV-00111, 2019 WL 9633211, at *7 (N.D. Ga. Dec. 17, 2019) (awarding the requested statutory damages of $50,000 per mark as "reasonable and consistent with similar awards in [the Eleventh] Circuit"); Anthem Indus., LLC v. Dawson, No. 1:16-CV-03386, 2017 WL 6996371, at *4 (N.D. Ga. Oct. 31, 2017) (granting the requested statutory damages when the plaintiff determined the "amount by estimating the average drop in Amazon sales from before and after" the defendant's infringing conduct); Chanel, Inc. v. Harrington, No. 1:08-CV-1998, 2009 WL 10670657, at *3 (N.D. Ga. May 8, 2009) (upholding the requested award when the plaintiff

"calculate[d] statutory damages by adding the value of the inventory offered for sale on the Defendant's website . . . and trebling that value to reflect Defendant's willfulness and doubling the result for deterrent effect").

Plaintiff has not prevailed on all of the claims alleged in its Amended Complaint.  However, Defendants acted willfully, and given Defendants' recent absence from this litigation, statutory damages will serve a valuable deterrent function.  Accordingly, the Court will award statutory damages for Plaintiff's trademark infringement and unfair competition claims in the amount of $100,000, to be apportioned jointly and severally between Defendants Parker and Jones.  The Court finds that $100,000 is a reasonable award, is not excessive and is sufficient to deter infringing conduct.  Accordingly, the Court **GRANTS IN PART** Plaintiff's request for statutory damages.

3.    *Attorney's Fees*

Plaintiff also seeks an award of attorney's fees.  The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  The Eleventh Circuit has held that "to be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated."  Tobinick v. Novella, 884 F.3d 1110, 1118 (11th

Cir. 2018) (quoting <u>Octane Fitness, LLC v. ICON Health & Fitness</u>, 572 U.S. 545, 554 (2014)).  The Court does not consider this case to be an exceptional one.  First, Plaintiff did not prevail on all of its claims.  Second, as noted earlier, the Court issued two show-cause orders related to the parties' failure to prosecute.  Because this case fails to meet the "exceptional" threshold, the Court declines to issue an award of attorney's fees.  The Court thus **DENIES** Plaintiff's request for attorney's fees.

**CONCLUSION**

For the reasons state above, Plaintiff's Motion for Default Judgment [Doc. 53] is **GRANTED IN PART** and **DENIED IN PART**.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff against Defendants in the following amount: statutory damages in the amount of $100,000.  All pending motions are **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that Defendants and their officers, directors, partners, agents, subcontractors, servants, employees, attorneys, affiliates, licensees, divisions, subsidiaries and related entities and all other acting in concert or participation with Defendant are **PERMANENTLY ENJOINED** from doing any of the following:

a.    Using the 112 mark on or in connection with any of Defendants' promotions or advertising and marketing;

b.    Using any trademark name of any kind on or in connection with Defendants' performances, appearances and events that is a copy, reproduction, colorable imitation, simulation of or confusingly similar to the 112 mark;

c.    Using any trademark, name, logo, design or source designation of any kind on or in connection with Defendants' advertising, marketing and promotion of any performance, appearance and events that is likely to cause confusion, mistake, deception or public misunderstanding that such performance, appearance or events are produced or provided by Plaintiff, are sponsored or authorized by Plaintiff or are in any way connected or related to Plaintiff;

d.    Passing off, palming off or assisting in passing off or palming off Defendants' performances, appearances or events as those of Plaintiff, or otherwise continuing any and all acts of unfair competition; and

e.    Using Plaintiff's 112 mark on Defendants' social media, including

but not limited to websites, Facebook, Instagram, Twitter or the

like, as well as the websites of any third parties, in Internet

advertisements, and/or in any advertising, promoting, distributing,

offering for sale and/or selling any entertainment services in any

media.

**SO ORDERED** this 21st day of October, 2021.

**J. P. BOULEE**
United States District Judge